SNYDER, Administrator of the Estate
of Charles E. Snyder *v.* CRABBS

[No. 14, September Term, 1971.]

*Decided October 11, 1971.*

The cause was submitted on briefs to HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

Submitted by *J. Thomas Nissell* and *C. Rogers Hall, Jr.,* for appellant.

Submitted by *Stanford Hoff* for appellee.

PER CURIAM.

Appellee sued her brother's estate to recover for the

personal services she rendered to him during the last two years of his life. The trial judge, Macgill, C. J., found the fair and reasonable value of her services to be $25 per week. He gave judgment in her favor against the appellant for $2,425. What follows is an excerpt from his opinion.

"There is no dispute in this case that the plaintiff performed the services for which she has claimed compensation. Furthermore, this court finds that, despite the testimony of Mrs. Dorothy B. Snyder, the plaintiff was not paid for her services. In the judgment of this court, Mrs. Crabbs, Mr. Stansbury and other witnesses for the plaintiff were truthful and credible. From the evidence recited, it is clear that Mrs. Crabbs expected to be paid for her services and that the deceased acknowledged that she was entitled to compensation. Even if it be assumed that the services rendered were to one of the family, the evidence overcomes the presumption that they were rendered gratuitously. It does not appear, however, that Mrs. Crabbs was a member of her brother Charles' family within the meaning of the law because she was not part of the household of Charles and did not live under his roof until she was asked to go there to render services. See: *Krug v. Mills,* 159 Md. 670, and *Neudecker v. Leister,* 132 Md. 571. She paid no board and lodging while she was living with the Stansburys and she paid no board and lodging while she was living in the home of Charles. In view of this it would not seem reasonable that she would leave the Stansbury home where she was able to make as much as twenty-five dollars ($25.00) per week from outside house-cleaning and take up more arduous chores on the expectation and understanding that she would receive nothing, particularly, as it ap-

pears, she had no other source of income. This court believes that this case is covered by the decisions in *Gill v. Staylor,* 93 Md. 453 and *Shaefer v. Hewes,* 225 Md. 207, and that the plaintiff is entitled to recover."

Appellant presents but one issue, namely, that Code (1971 Repl. Vol.), Art. 35, § 3 (the Dead Man's Statute) commands the exclusion not only of the testimony of parties to the cause but also the testimony of third parties in respect of transactions with the deceased. We have held many times that this statute is an exception to the policy stated in Code (1971 Repl. Vol.), Art. 35, § 1, that witnesses should not be excluded from giving evidence by reason of interest. And, we have held, it is to be narrowly construed. *Stacy v. Burke, Ex'r,* 259 Md. 390, 404 (1970) ; *Guernsey v. Loyola Federal Savings and Loan Ass'n,* 226 Md. 77, 80 (1961) ; *Shaneybrook v. Blizzard,* 209 Md. 304, 309 (1956). It is clear that the statute prohibits, with certain exceptions not now relevant, only parties from testifying as to transactions with the decedent. *Schilling v. Waller,* 243 Md. 271, 276 (1966). It is applied only to proceedings brought by or against an executor or administrator as such. Beyond this narrow area it has no application. *Guernsey v. Loyola Federal Savings and Loan Ass'n, supra; Sheeler v. Sheeler,* 207 Md. 264 (1955).

In *Tillinghast v. Lamp,* 168 Md. 34 (1935), Judge Offutt, speaking for the Court, said :

> "The purpose of the statute is to eliminate, so far as possible, frauds upon the estates of deceased persons, which might be effected by the testimony of such interested parties as are *actually parties* to a cause to enforce a claim against such an estate * * *." (Emphasis added.) *Id.* at 41.

While "party to the cause" has been interpreted to include a next friend (prochein ami), *Allers, Trustee v.*

*Leitch, Ex'r,* 213 Md. 390 (1957), we have held that it does not render a plaintiff's husband, *Marx, Ex'r v. Marx,* 127 Md. 373 (1916), or legatees under a will, *Schaefer v. Spear, Ex'r,* 148 Md. 620 (1925), incompetent to testify. *Ridgley, Ex'r v. Beatty,* 222 Md. 76 (1960), and *Bradford v. Eutaw Savings Bank of Baltimore,* 186 Md. 127 (1946), cited by the appellant, are both inapposite and distinguishable.

Appellant also argues that appellee was a member of the decedent's immediate family, raising the presumption that the services were rendered gratuitously. *See Shaefer v. Hewes, Ex'r,* 225 Md. 207 (1961); *Zahn v. Heil, Ex'r,* 192 Md. 576 (1949); *Roycroft, Admr'x v. Nellis,* 171 Md. 136 (1936); *Doyle, Adm'r v. Gibson,* 119 Md. 36 (1912); *Gill, Adm'r v. Staylor,* 93 Md. 453 (1901). Assuming she was, we agree with Judge Macgill that she has overcome the presumption by showing that her services were performed under circumstances demonstrating a reasonable expectation that there would be compensation.

Since there is no error the judgment will not be disturbed. Maryland Rule 886.

*Judgment affirmed.*
*Costs to be paid by the appellant.*